May it please the court, Assistant United States Attorney Beverly Louise Samishima. My name is Harlan Kimura and I represent defendant appellant Mr. Gabriel Ruiz Salcedo. In our opening brief, we raised four issues. However, the most important one will be the one we'll be discussing today. However, if there is time and or Your Honor is required, I address those other issues, I will do so. May I also ask that I be I have three minutes for rebuttal. Certainly. Now, first of all, the district court denied Mr. Salcedo's motion for substitution of counsel, finding that there was a matter of the conflict being litigation tactics. That was the problem, supposedly. But actually, when you look at the transcript, there was more than that, a lot more than that. According to Mr. Salcedo, he did state on the record to the judge that trial counsel called him a convicted felon, a coward, a rat. There was also indication that trial counsel swore at the defendant. Of course, Mr. Salcedo, in respect to the district court, would not want to repeat those words on the record. Why was the motion timely brought? This was on the eve of trial. As I understand it from the record, certain witnesses have been brought in from out of town. Yes, Your Honor, there were two witnesses that were brought from out of town, which were the government witnesses. However, the issue of timeliness is not necessarily the most important factor. According to the cases of the court, if the conflict is so severe, that sort of seems to be more important than timeliness, because as one of the cases that we cited say, timeliness itself is not enough if the conflict is so severe. Well, you know, Mr. Salcedo, your client, knew of the facts underlying his request, counsel's refusal to file a frivolous submission motion, a month before he filed the motion. So is there anything in the record to show, while Mr. Salcedo could not have requested new counsel at an earlier time, there is not necessarily anything specific in the record. But if you look at the entire record and the relationship between trial counsel and Mr. Salcedo, trial counsel did state on the record he didn't believe Mr. Salcedo, and he was trying to get, according to Mr. Salcedo, trial counsel was just trying to get Mr. Salcedo to cooperate with the government, not necessarily, I presume, to go to trial. So there is the implication that it could have been raised by Mr. Salcedo previously, but it was not brought to the attention of the court by trial counsel, because among other things, trial counsel didn't necessarily believe Mr. Salcedo. Now, after the conviction, you can really tell how much animosity there was between trial counsel and Mr. Salcedo, because at the renewed hearing on the motion for substitution, after the conviction, when Mr. Salcedo made his statement, trial counsel countered that I'm his attorney, I'm not his butler, I'm not his valet, I'm not going to jump to whatever hoops Mr. Salcedo. That was a response to something, though, wasn't it? I'm sorry? When he said I'm not your butler, I'm not his butler, I'm not his valet, he was responding to something, wasn't he? Yes, he was responding. Does it matter? I think it does matter in the sense it gives you an idea of the argument. But in the sense that you didn't make it clear that he was responding, he said that in response to something. Yes, Your Honor. And I'm asking you, is that a pivotal point when we consider the objection you're raising, do we have to look to see what he was responding to when he said it, or does it matter? It is not a pivotal point. I think it does provide some background information because the motion to substitute that we are challenging is the one before trial. However, what we're seeing is what the events that happened after trial sort of gives you additional information about really what was happening between the two of them, trial counsel and Mr. Salcedo. Because as I said before, you know, it seemed as though that trial counsel was upset with Mr. Salcedo as far as his questioning what he wanted done, as well as when it was being questioned, trial counsel wanted to really give, so to speak, a piece of his mind. Well, I think counsel in this matter gave Mr. Salcedo some tough advice, and it doesn't seem unwarranted under the circumstances given the incarceration exposure that Mr. Salcedo was facing by virtue of the 851 enhancements that the government could have filed. Now, we have to view everything in context, and we have to view it through the deferential lens to the extent that the court made factual findings. So I know Mr. Salcedo said that counsel called him a liar and that he was a coward and arrogant, but didn't counsel specifically address that and said, look, what I told him is don't cover up for other drug dealers because of, you know, fear of being labeled a rat. So that statement was made in the context of counsel's advice as to what Mr. Salcedo should do with his case. In addition, there was allegations of profanity being mentioned. So what Mr. Salcedo wanted to do was to lend some credibility to what he was saying about how his counsel was treating him, how his counsel was dealing with him. And, yes, Your Honor, I would agree that sometimes you may need to be firm with your reason to call your client a coward, a rat, or to even swear at your client. And the letter, there was a letter that Mr. Salcedo had in his hand that he offered to show the district court at the time he was making the statements about what the child was referring to him as, but the district court summarily dismissed it. Similarly — Not summarily. I mean, the district court conducted a very thorough hearing on this issue, didn't it? Yes, Your Honor. There was a very thorough hearing. There was a lot of questions being asked, and Mr. Salcedo was given time to respond. However, if you look at the transcript, almost every single reason that Mr. Salcedo gave as to why he wanted new counsel, because he mistrusted, distrusted child counsel, every single point was countered by the district court, almost like he was scolding Mr. Salcedo, rather than, according to the court's prior opinions about, when you have this inquiry, the whole point is you want to allay the mistrust, the fears, and the concerns of the defendant to determine whether or not there should be substitute counsel appointed or not. He'd had two other counsels, hadn't he, before Mr. Lee Roy? Yes. Yes, Your Honor. So he was dissatisfied with two people before he even got this counsel. And the district court judge, as I read the transcript, very thoroughly examined him to see whether or not he could be given a good defense and reach that conclusion, not quickly. He sort of brushed it away. He didn't. He kept pursuing and asking questions of Mr. Salcedo. So since he'd already had two other counsel, the district judge, I think, was trying to be very careful. It was four days before trial. How he claimed that there was anything wrong with that. In the transcript, it refers to the trial judge looking at the prior transcript where first counsel was dismissed. And the trial court, the district court did say, I looked at the transcript, and essentially you're giving me the same reasons now as to why you want new counsel as you did first counsel. If so, there was definitely good reason for the magistrate judge in the first instance to appoint new counsel. Because the Sixth Amendment demands at least we would submit an attorney who would treat you with respect, not swear at you, and at least take into account what you are told as to what the version of the facts are. And then match it up with the discovery. And then discuss with your client about how it needs to be addressed. But it seemed as though all trial counsel wanted to do was get him to cooperate with the government, plead guilty, and be done with it. And that, I believe, is a violation of Mr. Saucedo's Sixth Amendment right to counsel. Are there any other questions, Your Honors, about the Sixth Amendment substitution motion? Why don't you move on to the next issue? The second issue is regarding the suppression hearing. That also relates to the first issue. In this respect, I've never, I'm sorry, the suppression motion was done in the middle of a trial. Normally you would do it before trial. And why did trial counsel not file the motion ahead of time before trial? In the record, it does show when the district court asked him. He said, because I didn't believe my guy. And that's why there was the motion to suppress in the middle of the trial. Because the district court at that point felt there was an issue that needed to be covered. But regarding the motion itself, we would submit, as we did acknowledge, it's a plain error standard of review because trial counsel did not raise the issue that custody occurred or seizure occurred when there was initial contact with Mr. Saucedo, or at least before he got into the apartment. Because even if you take the facts that the district court found, there was the three officers. Agent Ewen essentially had to run or walk pretty fast to catch up with him. There was a bunch of other officers behind him in plain view. And Agent Ewen flashed this badge and asked or told Mr. Saucedo, where's the parcel? Or it could be, I saw you last night with two guys in the Mercedes and they gave you a parcel. Either way, you flash a DAA badge and you ask about a parcel. The reasonable conclusion is that it's got to be something illegal. Jugs, for instance, in the package. That being the case, there is the accusation right there. The last thing is Agent Ewen did not specifically tell Mr. Saucedo that he was free to disengage or to leave. The question that the government asked in regard to that was, did he have an option? Could he have walked away if he wanted to? Does it matter where this confrontation took place? Yes, it matters, but it is not pivotal because it was, yes, in a public area. But relating to that, Agent Ewen asked that they go and continue this discussion in the apartment. And in the apartment, essentially, Agent Ewen and the rest of the police officers were not going to let Mr. Saucedo go. You've got a minute and a half left. Would you like to say that? Yes, Your Honor. All right, thank you. Good morning, Your Honors. May it please the Court. My name is Beverly Wee Samashima, and I represent the United States. With respect to the first issue, the substitution of counsel, now, defendants have a right, a Sixth Amendment right, to conflict-free counsel, but they don't have a right to an attorney that they necessarily like or an attorney that necessarily has the greatest bedside manner. And that's precisely what we had in this case. As Judge Nelson recognized, the district court conducted a very thorough and complete inquiry, ex parte, with respect to the issue of whether Mr. Saucedo's attorney was, in fact, had a conflict with him and could not effectively represent him at trial. And he queried each of the parties very thoroughly. He queried Mr. Leloy. He also queried Mr. Saucedo. And at the end of that, he concluded and made some very specific factual findings, which should not be disturbed because there was no abuse of discretion on his part. He conducted a very thorough inquiry. He found out or he concluded that basically the disagreement was that Mr. Saucedo wanted Mr. Leloy to take certain actions that Mr. Leloy did not find had a legal basis or was based on a misunderstanding that Mr. Saucedo had. For example, he wanted him to file a suppression motion stating that the consent was given after the search was conducted. But in reality, Mr. Saucedo misunderstood the effect of a magistrate waiver that he signed, which was signed after the search was completed, and which was to allow Mr. Saucedo to continue cooperation and call his suppliers and other co-conspirators in the case. So Mr. Leloy told the district judge, Your Honor, he doesn't understand that that's the effect of that piece of paper, and I'm not going to file a motion based on something that's not premised in law. So that was one of the things that was articulated as the reason why he didn't like his attorney. Well, sometimes a lack of bedside manners, as you put it, can be sufficiently severe, rise to the level that really contributes to the extent of the conflict and mistrust that can occur between counsel and his client. And you've got some of that situation here with Mr. Saucedo indicating that there was use of profanity in their discussions and references to being a coward and a rat by not cooperating with the government. Granted, his exposure was severe and it wasn't unreasonable to tell him, this is your best route and this is what I'm recommending, but what does the record reflect with regard to how Mr. Saucedo was treated by his counsel and how do you think that impacts the inquiry in this case? Well, I know that Mr. Saucedo made accusations that he was called a liar by his attorney, but of course Mr. Leloy flatly denied that. What he did say is that Mr. Leloy said that he basically told Mr. Saucedo, bottom line, you have a really bad case. The evidence against you is overwhelming. I think your best option is to try to continue your cooperation because after all, not only did he give an oral and written confession, but he began his cooperation while in the custody of the agency. He actually made calls to his sources and made calls to one of the men in the black Mercedes that gave him the parcel. So I think that although the stylistic problems remained and that Mr. Saucedo didn't like what he heard, ultimately Mr. Leloy communicated and the judge so found that he was prepared to take this to trial that he would represent Mr. Saucedo in a very vigorous and effective manner and that there was no finding that there was any conflict of interest between the two. Now with respect to the question that you asked about the prior counsel, the first attorney in this case was an assistant federal defender and as the case went on and she had difficulty communicating with Mr. Saucedo, she called in her first assistant and so he was essentially served as a second attorney. And the judge in the hearing for the motion for substitution listened to the transcript, or I'm sorry, there was no transcript, but he listened to the hearing, the tape recorded hearing of the first magistrate proceeding and he said, you know, it sounds a lot like what Mr. Saucedo was telling me in this hearing. I don't really see that there's a conflict of interest within the meaning of the Sixth Amendment and in fact I thought the magistrate was really over accommodating and I did not think there was a basis to grant the motion. And that's reflected in the record. It's not that he actually made a case for substitution, but the magistrate basically bent over backwards and thought, okay, out of an abundance of caution I will in fact let him have another shot, have him another attorney. But this is now the third attorney at the eve of trial and the court made a specific finding that it would result, if a new attorney came in, it would result in a two-month, at least a two-month continuance. And although not a major point, he did say, I do consider the fact that the government has two witnesses already in town and they are ready to go. And I think the record is very complete on the district judge finding that Mr. Leloy could be very vigorous and could be very effective in representing Mr. Saucedo despite the evidence and in fact the record shows that Mr. Saucedo consulted with his attorney throughout the trial on various points in the trial and that they did communicate. So with respect to the first issue, we believe that the district court did not abuse his discretion and the substitution was correctly denied. With respect to the second issue, the initial encounter, the consensual encounter, again the defendant has a very hard burden because he didn't raise this below. He's subject to the plain error rule and he can't show that the error was so plain and obvious much less that it did affect the fairness and the integrity of the proceedings. Again, the judge made very complete, extensive findings of fact after hearing testimony from four of the witnesses as well as Mr. Saucedo himself and he considered all the factors that go to whether or not a reasonable person would have believed they were not free to leave. And he went through all those factors and he credited the testimony of the agent who first approached Mr. Saucedo. He made note of the fact that it was in a public sidewalk, that Mr. Saucedo readily cooperated and wanted to talk to the agents privately in his apartment and that the agents did in fact ask him as they were going up his stairs, may we enter your apartment, may we come in and search. But again, under the totality of all the circumstances, it was a very voluntary situation. He's out in the open, they're not wearing uniforms, they don't have their firearms displayed, they're speaking in a very cordial, conversational tone and under all these circumstances, the district court was quite correct in making his findings. And this court, although it's de novo, it's plain error review, the court should give some deference to the findings of the judge. We must. Are there any other issues that the court wishes to cover? No, I haven't. All right, thank you very much. Your Honor, I just wanted to bring up one very important point. If you look at all the proceedings that happened after the motion for substitution that was done before trial, it shows the conflict, the irreconcilable conflict between the parties. You look at the middle of trial where they had the motion for suppression. Does it matter what the basis of the conflict was? The basis of the conflict, the attorney wants him to plead, says you should cooperate with the government and plead, that's to your best interest. The accused says, no, I don't, I want to go to trial. Isn't that what the dispute was about? That should not be a dispute to be made and a decision to be made. No, all I ask you is does it matter? You can tell me. Yes, yes, it does matter because there are three things that every defendant has a right to decide on his own. Naturally, the right to testify, the right to plead guilty, and the right to represent himself. Once the decision is made by the defendant, you know, there is no reason for trial counsel to bad mouth him or to, so to speak, put the screws to him. Or try to persuade him. Very, very firmly, yes. Now, as I was mentioning earlier, if you look at what happened after the motion to substitute, it really shows the conflict. The grounds for the motion to suppress that was super spontaneously brought up by the district court, it was a reinitiation issue. That issue was never brought up by anyone. The judge had to bring it up. Why? Because probably there was a conflict between the defendant and counsel, and they weren't talking to each other. All right. Thank you, counsel. I think we've got your argument in hand. We appreciate it very much. The case of U.S. v. Salcedo is now submitted.
judges: Farris, Nelson, Nguyen